**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SPIN MASTER LTD., a Canadian corporation, and SPIN MASTER, INC., a Delaware corporation, | Case No. 26-cv-02313 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Spin Master Ltd. and Spin Master, Inc. (collectively, "Spin Master" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and, on information and belief, have sold products using infringing and counterfeit versions of Spin Master's trademarks, unauthorized copies of Spin Master's federally registered copyrighted works, or both to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Spin Master to combat e-commerce store operators who trade upon Spin Master's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Spin Master's federally registered trademarks and/or unauthorized copies of Spin Master's federally registered copyrighted works (collectively, the "Unauthorized PAW Patrol Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Unauthorized PAW Patrol Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Spin Master is forced to file this action to combat Defendants'

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized PAW Patrol Products over the Internet. Spin Master has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiffs**

4. Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 225 King Street West, Toronto, Ontario, Canada.

5. Plaintiff Spin Master, Inc. is a Delaware corporation with its principal place of business at 11858 La Grange Ave., Suite C, Los Angeles, California 90025. Spin Master, Inc. is Spin Master Ltd.'s subsidiary and exclusive licensee in the United States.

6. Spin Master is a leading global children's entertainment company that creates, designs, manufactures and markets a diversified portfolio of innovative toys, games, products and entertainment properties. Since 2005, Spin Master has received 64 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 18 wins across a variety of product categories. Spin Master has been recognized with 12 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters and content, but also monetize that content through the creation, sale and licensing of products.

7. One of the categories of toys widely associated with Spin Master is PAW Patrol, a line of toys (collectively referred to herein as "PAW Patrol Products") based on the hit animated pre-school television series of the same name that has aired on Nickelodeon in the United States

3

since August 2013 and has been sold to television networks in over 160 countries around the world.

Some of the characters and character names made famous by the PAW Patrol television series are:



| Chase | Sky | Marshall |
| Rubble | Rocky | Zuma |
| Everest | Tracker | Ryder |

8.      PAW Patrol toy sales have generated millions of dollars in revenue for Spin Master and increased Spin Master's presence in the preschool toy market.  In fact, PAW Patrol has since become one of Spin Master's most profitable brands. Analysts for the National Bank of Canada reported that toys and games based on the show accounted for approximately $245 million U.S. (or 25 percent) of Spin Master's gross product sales for 2015.

9.      PAW Patrol Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine PAW Patrol Products are instantly recognizable as such.  The PAW Patrol brand has become a global success that resonates with children worldwide, and PAW Patrol Products are among the most recognizable in the world.  PAW Patrol Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Target and Walmart, and through the official pawpatrol.com/shop website.

10.      Spin Master began using the PAW PATROL trademarks in 2014 and has continuously sold products under the PAW PATROL and other trademarks (collectively, the "PAW PATROL Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the PAW PATROL Trademarks.  Spin Master's use of the marks has also built substantial goodwill in and to the PAW PATROL Trademarks.  The PAW PATROL Trademarks are famous marks and valuable assets of Spin Master.  PAW Patrol Products typically include at least one of the registered PAW PATROL Trademarks and/or various copyrighted works (the "PAW Patrol Copyrighted Works").

11.      Several of the PAW PATROL Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark |
| --- | --- |
| 4,848,752 | PAW PATROL |

5

| 4,675,681 | |
|---|---|
| 4,614,743 | |
| 5,087,871 | TRACKER |
| 4,932,184 | EVEREST |
| 4,792,695 | ZUMA |
| 4,779,749 | SKYE |
| 4,779,748 | ROCKY |
| 4,779,747 | CHASE |
| 4,779,746 | MARSHALL |
| 4,779,745 | RUBBLE |
| 4,601,882 | RYDER |
| 5,218,798 |  |

12.     The above U.S. registrations for the PAW PATROL Trademarks are valid, subsisting, and in full force and effect.  The registrations for the PAW PATROL Trademarks constitute *prima facie* evidence of their validity and of Spin Master's exclusive right to use the PAW PATROL Trademarks pursuant to 15 U.S.C. § 1057 (b).  True and correct copies of the United States Registration Certificates for the above-listed PAW PATROL Trademarks are attached hereto as **Exhibit 1**.

13.     The PAW PATROL Trademarks are distinctive when applied to the PAW Patrol Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards.  Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the PAW PATROL Trademarks are manufactured to the highest quality standards.

14.     The PAW PATROL Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the PAW Patrol Products have enabled the PAW Patrol brand to achieve widespread recognition and fame and have made the PAW PATROL Trademarks some of the most well-known marks in the toy and children's entertainment industries.  The widespread fame, outstanding reputation, and significant goodwill associated with the PAW Patrol brand have made the PAW PATROL Trademarks valuable assets of Spin Master.

15.     Spin Master has expended substantial time, money, and other resources in advertising and promoting the PAW PATROL Trademarks.  In fact, Spin Master has expended millions of dollars in advertising, promoting and marketing featuring the PAW PATROL Trademarks.  PAW Patrol Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the PAW PATROL Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spin Master.  PAW Patrol Products have become among the most popular of their kind in the U.S. and the world.  The PAW PATROL Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the PAW PATROL Trademarks is of incalculable and inestimable value to Spin Master.

16.     Genuine PAW Patrol Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the PAW Patrol brand.

17.     Since at least as early as 2014, genuine PAW Patrol Products have been promoted and sold at the official pawpatrol.com/shop website.  Sales of PAW Patrol Products via the

pawpatrol.com/shop website are significant. The pawpatrol.com/shop website features proprietary content, images and designs exclusive to the PAW Patrol brand.

18. Spin Master has registered its PAW Patrol Copyrighted Works with the United States Copyright Office. The registrations include, but are not limited to: "Paw Patrol Toys Chase and Police Car 1.0" (U.S. Copyright Registration No. VA 1-967-964), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Everest and Snowmobile 1.0" (U.S. Copyright Registration No. VAu 1-217-618), issued by the Register of Copyrights on June 16, 2015; "Paw Patrol Toys Marshall and Firetruck 1.0" (U.S. Copyright Registration No. VA 1-967-980), issued by the Register of Copyrights on June 15, 2015; "PAW PATROL LOGO ART 1.0" (U.S. Copyright Registration No. VA 1-912-869), issued by the Register of Copyrights on May 30, 2014; "Paw Patrol Toys Packaging Artwork 1.0" (U.S. Copyright Registration No. VA 1-999-428), issued by the Register of Copyrights on November 5, 2015; "Paw Patrol Tracker & Vehicle" (U.S. Copyright Registration No. VAu 1-294-879), issued by the Register of Copyrights on September 14, 2017; "Paw Patrol Toys Rocky and Garbage Truck 1.0" (U.S. Copyright Registration No. VA 1-967-970), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Rubble and Mover Truck 1.0" (U.S. Copyright Registration No. VA 1-968-054), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Ryder and ATV 1.0" (U.S. Copyright Registration No. VA 1-967-973), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Skye and Helicopter 1.0" (U.S. Copyright Registration No. VA 1-967-971), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Zuma and Hovercraft 1.0" (U.S. Copyright Registration No. VA 1-968-053), issued by the Register of Copyrights on June 15, 2015. True and correct copies of the U.S. federal copyright registration certificates for the above-referenced PAW Patrol Copyrighted Works are attached hereto as **Exhibit 2**.

19.     Among the exclusive rights granted to Spin Master under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the PAW Patrol Copyrighted Works to the public.

20.     Since first publication, the PAW Patrol Copyrighted Works have been used on the PAW Patrol Products and are featured on Spin Master's website at pawpatrol.com/shop.  PAW Patrol Products featuring the PAW Patrol Copyrighted Works are advertised on Spin Master's website at pawpatrol.com/shop.

**The Defendants**

21.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Spin Master.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

22.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Spin Master to discover Defendants' true identities and the exact interworking of their network.  If Defendants provide additional credible information regarding their identities, Spin Master will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

23.     The success of the PAW Patrol brand has resulted in significant counterfeiting of the PAW PATROL Trademarks and copying of the PAW Patrol Copyrighted Works. Consequently, Spin Master has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.  In recent years, Spin Master has identified many fully interactive, e-commerce stores offering Unauthorized PAW Patrol Products on online marketplace platforms such as Amazon, Temu, Walmart, and PayPal including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States.  At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China..[3]

24.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4]  Counterfeiters hedge against the risk of being caught and having their websites taken

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025),    https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html..
[3] *Id.*; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

25.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and, on information and belief, have sold Unauthorized PAW Patrol Products to residents of Illinois. Screenshots evidencing Defendant's infringing activities are attached as **Exhibit 3**.

26.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers.  E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars from U.S. consumers.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Spin Master has not licensed or authorized Defendants to use any of the PAW PATROL Trademarks or copy

---

[5] *Id.* at 22.
[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

the PAW Patrol Copyrighted Works, and none of the Defendants are authorized retailers of genuine PAW Patrol Products.

27.     Many Defendants also deceive unknowing consumers by using the PAW PATROL Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PAW Patrol Products. Other e-commerce stores operating under the Seller Aliases omit using PAW PATROL Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for PAW Patrol Products.

28.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

29.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized PAW Patrol Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

30.     Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of

occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

31. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

32. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Spin Master's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Spin Master. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

33. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized PAW Patrol Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Spin Master, have knowingly and willfully used and continue to use the PAW PATROL Trademarks and PAW Patrol Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized PAW Patrol Products into the United States and Illinois over the Internet.

34. Defendants' unauthorized use of the PAW PATROL Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized PAW Patrol Products,

including the sale of Unauthorized PAW Patrol Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Spin Master.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered PAW PATROL Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The PAW PATROL Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from PAW Patrol Products offered, sold or marketed under the PAW PATROL Trademarks.

37.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the PAW PATROL Trademarks without Spin Master's permission.

38.     Spin Master is the exclusive owner of the PAW PATROL Trademarks.  Spin Master's United States Registrations for the PAW PATROL Trademarks (**Exhibit 1**) are in full force and effect.  On information and belief, Defendants have knowledge of Spin Master's rights in the PAW PATROL Trademarks and are willfully infringing and intentionally using counterfeit versions of the PAW PATROL Trademarks.  Defendants' willful, intentional and unauthorized use of the PAW PATROL Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized PAW Patrol Products among the general public.

14

39.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     Spin Master has no adequate remedy at law, and if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the PAW PATROL Trademarks.

41.     The injuries and damages sustained by Spin Master have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized PAW Patrol Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

42.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

43.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized PAW Patrol Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Spin Master or the origin, sponsorship, or approval of Defendants' Unauthorized PAW Patrol Products by Spin Master.

44.     By using the PAW PATROL Trademarks in connection with the Unauthorized PAW Patrol Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized PAW Patrol Products.

45.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized PAW Patrol Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46.     Spin Master has no adequate remedy at law and, if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the PAW Patrol brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT**
**REGISTRATIONS (17 U.S.C. §§ 106 AND 501)**

47.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

48.     The PAW Patrol Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

49.     Spin Master has complied with the registration requirements of 17 U.S.C. § 411(a) for the PAW Patrol Copyrighted Works.  The PAW Patrol Copyrighted Works are protected by Copyright Registration Nos. VA 1-967-964, VAu 1-217-618, VA 1-967-980, VA 1-912-869, VA 1-999-428, VAu 1-294-879, VA 1-967-970, VA 1-968-054, VA 1-967-973, VA 1-967-971, and VA 1-968-053, which were duly issued to Spin Master by the United States Copyright Office.  At all relevant times, Spin Master has been and still is the owner of all rights, title, and interest in the PAW Patrol Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

50.     The PAW Patrol Copyrighted Works are published on the internet and available to Defendants online.  As such, Defendants had access to the PAW Patrol Copyrighted Works via the internet.

51.     Without authorization from Spin Master, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivative works incorporating the PAW Patrol Copyrighted Works on the Defendant Internet Stores and the

corresponding Unauthorized PAW Patrol Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the PAW Patrol Copyrighted Works. Such conduct infringes and continues to infringe the PAW Patrol Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

52. Defendants reap the benefits of the unauthorized copying and distribution of the PAW Patrol Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized PAW Patrol Products.

53. The Defendants have unlawfully appropriated Spin Master's protectable expression by taking material of substance and value and creating Unauthorized PAW Patrol Products that capture the total concept and feel of the PAW Patrol Copyrighted Works.

54. On information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to Spin Master's rights.

55. The Defendants, by their actions, have damaged Spin Master in an amount to be determined at trial.

56. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Spin Master great and irreparable injury that cannot fully be compensated or measured in money. Spin Master has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Spin Master is entitled to a preliminary and permanent injunction prohibiting further infringement of the PAW Patrol Copyrighted Works.

**PRAYER FOR RELIEF**

WHEREFORE, Spin Master prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the PAW PATROL Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PAW Patrol Product or is not authorized by Spin Master to be sold in connection with the PAW PATROL Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the PAW Patrol Copyrighted Works in any manner without the express authorization of Spin Master;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine PAW Patrol Product or any other product produced by Spin Master, that is not Spin Master's or not produced under the authorization, control, or supervision of Spin Master and approved by Spin Master for sale under the PAW PATROL Trademarks and/or the PAW Patrol Copyrighted Works;

   d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized PAW Patrol Products are those sold under the authorization, control or supervision of Spin Master, or are sponsored by, approved by, or otherwise connected with Spin Master;

   e. further infringing the PAW PATROL Trademarks and/or the PAW Patrol Copyrighted Works and damaging Spin Master's goodwill; and

    f.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Spin Master, nor authorized by Spin Master to be sold or offered for sale, and which bear any of Spin Master's trademarks, including the PAW PATROL Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the PAW Patrol Copyrighted Works;

2) Entry of an Order that, upon Spin Master's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, Temu, Walmart, and PayPal (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the PAW PATROL Trademarks and/or which bear the PAW Patrol Copyrighted Works;

3) That Defendants account for and pay to Spin Master all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the PAW PATROL Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Spin Master be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PAW PATROL Trademarks;

5) As a direct and proximate result of Defendants' infringement of the PAW Patrol Copyrighted Works, Spin Master is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Spin Master's election prior to any final judgment being entered, Spin Master is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Spin Master is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 2nd day of March 2026.       Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Trevor C. Talhami
Rachel M. Ackerman
Greer, Burns & Crain, Ltd.
200 W. Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ttalhami@gbc.law
rackerman@gbc.law

*Counsel for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*